LLOYD FISHER, APPELLANT, v. PHOENIX ASSURANCE COMPANY OF LONDON, RESPONDENT.

Argued May 21, 1926—Decided October 18, 1926.

1. A prorating clause in a fire insurance policy reading: "This company shall not be liable under this policy for a greater proportion of any loss by, and expense of removal from premises endangered by, fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property," *held*, to entitle the insurer to prorate with another policy covering the same property, but in the name of a former owner, never formally canceled, although for lack of proper transfer such other insurance was not available to the holders of the policy now in suit.
2. The holders of the policy in suit having made proof of loss based on prorating with another policy on which they were not entitled to collect, and having accepted the draft of the defendant company on that basis, they are not entitled to claim more than the amount of such draft, although it was not cashed and was tendered back to the company after some months had elapsed and as a preliminary to the present suit.

---

On appeal from a judgment of the Supreme Court, in which Judge Jess, sitting without a jury, filed the following opinion:

"A jury having been waived, this case was submitted to the court for decision on an agreed state of facts and briefs on the law.

"The question to be decided is whether the defendant is liable to the plaintiff under a policy of fire insurance for the whole amount of a loss suffered by the plaintiff's assignors or whether its liability is limited to a proportionate part of the loss, by virtue of a prorating provision in its policy.

"The facts, as stipulated, are that on the 24th day of July, 1923, George E. Bergkamp & Son, Incorporated, obtained from the Stuyvesant Insurance Company a three-year fire insurance policy for $5,000 covering property then owned by the Bergkamp corporation. The policy was in the usual New Jersey standard form and contained a mortgage clause in favor of the Fidelity Title and Mortgage Company of Ridgewood, New Jersey. The policy was delivered to the mortgagee and remained in its possession until after the fire on the 17th day of June, 1924, which fire gave rise to the questions here involved. This policy contained the following stipulation: 'This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void * * * or if any change other than by the death of an insured take place in the interest, title or possession of the subject of insurance * * * or if this policy be assigned before a loss.'

"On or about December 15th, 1923, the property insured was sold to Harvey and Elizabeth Hoyt. On the 18th day of January following, the new owners secured a $6,000 fire policy on the property from the Phoenix Assurance Company, Limited, of London. This policy contained the following provision: 'This company shall not be liable under this policy for a greater proportion of any loss by, and expense of removal from premises endangered, by fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property.'

"A few weeks thereafter, application was made to the mortgagee for a guarantee of title. This was the first knowledge the mortgagee had of the change of ownership. The mort-

gagee immediately wrote to the agent of the Stuyvesant Insurance Company who had countersigned the original Stuyvesant policy, notifying the agent of the change of ownership and requesting that an endorsement be sent to the office of the mortgagee, to be attached to the original policy to protect the new owner and the mortgagee. Neither the mortgagee nor the owner ever received any acknowledgement from the Stuyvesant company, or from any of its agents, of the receipt of the mortgagee's letter, and there was never added to the Stuyvesant policy any endorsement showing change of ownership.

"The Stuyvesant company claims that the first knowledge it had of the change of ownership was when the proof of loss was submitted by the mortgagee, following the fire of June 17th, 1924.

"Neither the seller nor the purchasers of the property have any memorandum as to the passing of title. Mr. Hoyt is under the impression that he made an allowance to Mr. Bergkamp for the unearned premium on the Stuyvesant policy.

"On or about September 15th, 1924, Harvey and Elizabeth Hoyt prepared and executed a properly drawn proof of loss addressed to the defendant, the Phoenix Insurance Company, Limited, in which the whole damage was stated to be $3,123.66, and in which the loss was apportioned as follows: The Phoenix Insurance Company, Limited, $2,104.44; the Stuyvesant Insurance Company, $722 [the amount of the loss apportioned to the defendant as stated in the stipulation, namely, $2,104.44, obviously was a typewriting error, since it is conceded by the parties, and the other evidence shows, that this sum should be $2,401.44]. The proof of loss was approved by an officer of the defendant company on September 22d, 1924. A draft as of that date for $2,401.44 was tendered to and accepted by the insured.

"On October 1st, 1924, the insured executed and submitted to the defendant a new proof of loss, alleging the loss to be $3,123.66, and claiming the whole amount thereof from the defendant, not giving credit for any *pro rata* share against the Stuyvesant company. On April 29th, 1925, the attorney

for the insured wrote the defendant that he was instituting suit against it and accordingly was returning the draft. This company has not paid and denies liability for any claim under its policy.

"The insured have assigned their rights under the Phoenix policy to the plaintiff in this suit. The plaintiff insists that the defendant is liable for the whole amount of the damage done to the property in question. The defendant seeks to limit the liability to a *pro rata* share of the total loss.

"The plaintiff relies upon the provision in the Stuyvesant policy that the entire policy, unless otherwise by agreement endorsed therein or added thereto, should be void if any change other than by the death of the insured should take place in the interest, title or possession of the subject of insurance.

"The plaintiff's claim thus is predicated upon the proposition that the Stuyvesant policy was rendered absolutely void by the change in the ownership of the property without the insurer's consent endorsed upon or annexed to the policy, and that consequently there can be no prorating with that policy. The Stuyvesant company is not a party to this action and therefore its liability, if any, to the plaintiff on its policy cannot be determined in this proceeding, so as to be binding either upon that company or the plaintiff.

"Assuming that the Stuyvesant company could successfully resist enforcement of its policy by the plaintiff on the ground that the placing of other insurance upon the property without its consent, manifested in accordance with the provisions of its contract, voided the policy, I am not permitted to hold as a matter of law that that would be the result when to do so would require me to resolve every issue of fact in favor of the company, in the absence of such disclosure of the facts as could only be obtained by litigating the questions involved.

"In the case of *Plockzeli* v. *St. Paul Fire & Marine Insurance Co.*, 91 *Atl. Rep.* 812, Vice Chancellor Howell held that a provision similar to that in the Stuyvesant policy must be enforced unless there is evidence that it has been waived by the insurer. He found no evidence of waiver in

that case, but stated that in a given case the facts might warrant the conclusion of a waiver.

"The validity or invalidity of the Stuyvesant policy is not, however, the controlling factor in this case. The plaintiff here seeks to hold the defendant liable under its policy for the whole amount of the loss resulting to the plaintiff's assignors. The defendant's liability is to be determined by reference to its contract of insurance. This contract provided that the company should not be liable for a greater proportion of any loss than the amount insured by its policy should bear to the whole insurance, whether valid or not, covering the property in question.

"It will, of course, be conceded that under this provision the defendant would be entitled to prorate the loss with the Stuyvesant company, if that company's policy is a valid obligation enforceable against it. The limiting of the liability of the insurer for any loss to its proportional share of the whole insurance is explicitly expressed in the prorating provision. That this liability shall thus be limited without regard to the validity of other insurance seems to be expressed with equal clearness and conclusiveness. The clause 'whether valid or not' plainly imports a purpose to exclude from the scope of the prorating provision any question as to the liability of other insurers on the same property.

"As was said by the United States Supreme Court with respect to another provision of a fire insurance contract:

"'This clause, as a known part of the stipulations of the policy, ought to receive a fair and reasonable interpretation, according to its obvious import.' *Carpenter* v. *The Providence Washington Insurance Co.,* 16 *Pet.* 495.

"It is true that there has been a conflict of judicial opinion as to the effect to be given provisions in fire policies somewhat analogous to that under consideration. Some of this contrariety of view has been due to the special facts in given cases or to the varying terms of the insurance contracts subject to review.

"When the test has been the meaning to be attributed to provisions essentially similar to that in the prorating stipula-

tion of the defendant's policy, the weight of authority is that they must be interpreted according to their plain purpose.

"The stipulation inserted in a fire policy by which the insurer is liable only for its *pro rata* share of the loss whether other insurance is valid or not, was devised to obviate the difficulty arising out of a determination as to the validity of such other insurance. 19 *Cyc.* 841.

"In the case of *Jersey City Insurance Co.* v. *Nichol,* 35 *N. J. Eq.* 291, the Court of Errors and Appeals held that where a second policy by its express terms was void at the time it was executed, there could be no apportionment of loss on that and a prior valid policy. The rule was stated in the syllabus of the opinion to be that where an apportionment of loss is provided for in a policy, this can only be construed to apply to other insurance valid in its inception.

"The prorating provision of the policy before the court in that case did not contain the stipulation that the provision should be binding whether the other insurance was valid or not. The court, therefore, had no occasion to construe the effect of such a stipulation. All that the court held was that an attempt to insure which did not eventuate in a valid contract of insurance afforded no basis upon which to limit the liability under a prior valid policy to its proportionate share of the loss.

"In the case *sub judice,* the insurance with which the defendant seeks to prorate the loss was unquestionably valid at its inception and probably continued to be valid so far as the interests of the mortgagee are concerned.

"If the facts and the prorating provision of the policy in Jersey City Insurance Co. *v.* Nichol had been similar to those appearing in the case here under consideration, it is fairly deducible from the opinion that the right of apportionment would have been sustained in the case cited.

"In *Cassily* v. *New Orleans Insurance Asso.,* 65 *Miss.* 49, the association issued a policy in which it was provided that the assured should not be entitled to recover any greater proportion of the loss or damage than the amount thereby insured bore to the whole sum insured 'without reference to the solvency or liability of other insurers.' At the time

of taking out this policy, the assured had another policy on the same goods in the Mississippi Home Insurance Company, in which there was a provision that the policy should be void if other insurance should be obtained without the consent of the said company. The plaintiff failed to notify the Home company of the later insurance, and the Home company repudiated all liability on the ground that it had not consented to the additional insurance. It was contended that the Home policy having become forfeited was no longer any insurance and was to be excluded as a factor in determining the extent of defendant's liability.

"The Supreme Court of Mississippi, in this case, held that plaintiff's claim could not prevail, and said: 'We cannot, in applying the rule which construes the instrument most strongly against the insurer, close our eyes to the manifest purpose of this clause and so refine upon language as to defeat the object sought to be accomplished.'

"Similarly, the Supreme Court of Michigan, in a majority opinion written by Chief Justice Cooley, held that the stipulation in a fire insurance policy that in adjusting a loss, other existing policies should be taken into account, even though forfeited, to be a competent provision and not unreasonable, its purpose being to protect the company against the necessity of contesting with the insured any question of the validity of the other insurance. *Liverpool, London and Globe Insurance Co.* v. *Verdier,* 35 *Mich.* 395.

"In the case of *London and L. Fire Insurance Co.* v. *Turnbull,* 5 *S. W. Rep.* 542, the Kentucky Court of Appeals held that where the policy provides for prorating the loss with other insurance, whether the same is valid or invalid, the insured is bound by its terms.

"A similar opinion was expressed by the Supreme Court of Indiana in *Phenix Insurance Co.* v. *Lamar,* 7 *N. E. Rep.* 241. In that case the court held that the contract is that other insurance, whether valid or not, taken without the written consent of the insurance company, should not be the subject of future contest. Such a stipulation is not against public policy. It is to have effect in accordance with its plain and obvious meaning.

"The Supreme Court of South Carolina held that though the issuance of a policy by the defendant insurance company rendered other insurance voidable, yet, the defendant was liable only for a proportionate part of the loss under the policy thus limiting liability, whether the other insurance was valid or not. *Gandy* v. *Orient Insurance Co., 29 S. E. Rep.* 655.

"In the case of *Continental Insurance Co.* v. *Hulman & Cox, 92 Ill.* 145, the Supreme Court of Illinois expressed the opinion that the words used in a fire insurance policy in referring to other insurance, 'whether valid or not,' were inserted to prevent any controversy as to the validity of other insurance and are not to be disregarded.

"Under a policy containing a provision that the insurer shall not be liable thereunder for a greater proportion of the loss 'than the amount hereby insured shall bear to the whole insurance, whether valid or invalid,' it was held that the insurer was liable for only such proportion of the loss where the insured had other insurance on the same property under a policy issued by another company which was invalid because he was not 'the sole and unconditional owner' of the property. *Bateman* v. *Lumbermen's Insurance Co.,* 189 *Pa. St.* 465.

"The rule seems to be the same in New York. In *Rickerson* v. *The German-American Insurance Co., 6 App. Div.* 550, it was decided that where two policies of insurance upon the same property are concurrent and contain a contribution clause, the clause should be enforced in favor of one of the insurance companies, although the other may escape liability; the company held liable should not be charged with any greater liability than its proportionate amount of a loss which it contracted to pay.

"The fact that the other insurance in the case *sub judice* was not issued to the plaintiff's assignors, but to their predecessors in title, does not alter the rule, which is to be adduced from the cases cited. The provision in plaintiff's policy is that the defendant shall prorate with other insurance covering the same property. The right of the insurer to appor-

tion the liability is not limited to insurance issued to the assured.

"The Stuyvesant policy, admittedly, was on the same property as that covered by defendant's policy. It was therefore within the purview of the clause limiting liability.

"Nor is this a case where the other insurance existed without the knowledge or consent of the assured. One of the owners of the property thinks that in the settlement with the previous owner he made an allowance for the premium on the existing policy.

"In any event, after the fire the plaintiff's assignors recognized the existence of the prior policy, and in their formal proof of loss claimed under that policy the proportion of the loss the Stuyvesant company had contracted to pay.

"The defendant is entitled to prevail also in its second contention that an adjustment of the loss between the plaintiff's assignors and the defendant was arrived at which is conclusive against the plaintiff's present claim.

"The fire which gave rise to the loss occurred on June 17th, 1924. On August 19th, 1924, the Stuyvesant company, by letter, advised the insured that the company disavowed liability on its policy. On September 15th, 1924, the insured executed a proof of loss in which the whole damage was stated to be $3,123.66, and in which the insured claimed of the defendant company, under its policy, the sum of $2,401.44. A draft for the amount, dated September 22d, 1924, was tendered to, and accepted by, the insured.

"At the time of this adjustment, the insured knew that the Stuyvesant company denied liability on its policy, and, notwithstanding that knowledge, claimed from the defendant only such proportion of the loss as the amount of defendant's policy bore to the whole insurance, including the amount insured by the Stuyvesant policy. The *pro rata* share of the loss thus agreed upon was paid to and, as expressly stated in the stipulation, accepted by the insured. Any right which the insured may have had to recover their whole loss from the defendant was surrendered when, with full knowledge of the situation, they agreed to accept, and, in fact, did accept, a lesser sum in settlement of their claim. *Weir* v.

*Allen,* 89 *N. J. L.* 597; *Worcester Loom Co.,* v. *Heald,* 78 *Id.* 172; *Trenton St. Railway Co.* v. *Lawlor,* 74 *N. J. Eq.* 828; *Dobbs* v. *New Amsterdam Casualty Co.,* 2 *N. J. Mis. R.* 649; *North* v. *Jersey Knitting Mills,* 98 *N. J. L.* 157, 159.

"I find that the prorating provision in the policy sued on must be given effect, according to its plain terms, as a part of the contract; that under that provision the defendant's liability is $2,401.44; that the plaintiff's assignors accepted a draft for that sum in satisfaction of their claim, and that the plaintiff in this suit is entitled to recover only that amount."

For the appellant, *Ryman Herr* (*Edward J. Johnson,* of counsel).

For the respondent, *Lum, Tamblyn & Colyer* (*Chester W. Fairlie,* of counsel).

PER CURIAM.

The judgment under review will be affirmed, for the reasons stated in the opinion of Judge Jess in the court below.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, WHITE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, JJ. 13.

*For reversal*—None.